UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JARED KRUGER, | Case No. 20-CV-629 (NEB/DTS) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |
| LELY NORTH AMERICA, INC., LELY INDUSTRIES N.V., LELY INTERNATIONAL N.V., LELY HOLDING B.V., and MAASLAND N.V., | |
| Defendants. | |

Plaintiff Jared Kruger purchased a Lely Astronaut A4 robotic milking system that he alleges contained latent defects that ruined his milk and caused infections in his cows. (ECF No. 47 ("Am. Compl.") ¶¶ 183, 193–95, 198–202.) Kruger, on behalf of himself and a putative class, sued several Lely entities: Lely Holding B.V. ("Lely Holding"), Maasland N.V. ("Maasland"), Lely International N.V. ("Lely International"), Lely Industries N.V ("Lely Industries"), and Lely North America, Inc. ("Lely N.A.") (collectively, "Lely"). (Am. Compl.) Lely moved the Court to dismiss for lack of personal jurisdiction and, separately, for failure to state a claim.[1] (ECF Nos. 55, 61.) The Court previously denied

---

[1] All Defendants except Lely N.A.—the "Dutch Defendants"—brought the Motion to Dismiss for Lack of Personal Jurisdiction, which was denied. (ECF No. 95.) All Defendants brought the Motion to Dismiss for Failure to State a Claim.

the motion to dismiss for lack of personal jurisdiction and ordered limited jurisdictional discovery. (ECF No. 95.) The Court now considers Lely's motion to dismiss for failure to state a claim, and for the reasons that follow, dismisses only Kruger's breach of contract claim.

## BACKGROUND

In March 2015, Kruger, a dairy farmer who lives in Wabasha, Minnesota, contracted with Dairyland Equipment Services[2] ("Dairyland"), a dealer of Lely products, to purchase an Astronaut A4 milking system. (Am. Compl. ¶ 40; ECF No. 31-4 ("Customer Agreement").) The Customer Agreement between Kruger and Dairyland contained a Limited Product Warranty, which warranted that the A4 system would be free from defects in material and workmanship. (Customer Agreement at 28–29.[3])

In November 2015, Kruger began using the A4 system to milk his cows. (Am. Compl. ¶ 192.) In spring 2016, Kruger noticed a heightened somatic cell count[4] in his cows' milk, which, by August, was high enough that the milk could no longer be certified

---

[2] Dairyland later renamed itself Leedstone, Inc. (Am. Compl. ¶ 196.) For simplicity, the Court will continue to refer to the company as "Dairyland."

[3] Page numbers in citations to the Customer Agreement reference ECF page numbers.

[4] Somatic cell count is an indicator of the quality of milk. Michael Looper, *Reducing Somatic Cell Count in Dairy Cattle*, https://www.uaex.edu/publications/pdf/FSA-4002.pdf (last accessed Jan. 29, 2021). Milk processors prefer milk with low somatic cell counts, as this milk will generally keep better and is better for cheesemaking. *Id.* at 1. High somatic cell counts may be indicative of mastitis, a condition where the cow's mammary glands are inflamed. *Id.*

as Grade A.[5] (*Id.* ¶ 193.) Kruger claims this spike in somatic cell count was due to infection of his cows' udders caused by defects in the A4 system. (*Id.*)

Kruger contacted Dairyland and told it that the A4 system was not performing as warranted. (*Id.* ¶ 196.) Specifically, he noted, the system was not detecting mastitis, properly examining milk quality, or separating contaminated milk. (*Id.*) Dairyland sent personnel to examine the A4. (*Id.* ¶ 197.) Despite the Dairyland personnel washing the system and checking the vacuum pump, the A4 continued to malfunction. (*Id.*) Due to the A4's continued defects, in December 2016, Kruger ceased using it and reverted to his old milking system. (*Id.* ¶¶ 198, 202.)

Kruger, along with three other dairy farmers who had purchased A4 systems, sued Lely in a purported class action. (ECF No. 1.) The other dairy farmers later voluntarily dismissed their claims (ECF Nos. 44–46), leaving Kruger as the sole plaintiff. Kruger then filed the Amended Class Action Complaint, including claims for breach of contract, breaches of express and implied warranties, negligence, strict liability, and fraudulent concealment. (Am. Compl. ¶¶ 257–335.) The Amended Complaint also includes claims that Lely violated three Minnesota statutes: the False Statement in Advertising Act, the Prevention of Consumer Fraud Act, and the Minnesota Deceptive Trade Practices Act. (*Id.* ¶¶ 336–58.)

---

[5] In Minnesota, milk with a somatic cell count of more than 750,000 cells per milliliter cannot be certified as Grade A. Minn. Stat. § 32D.13, subdiv. 8(a).

Lely brought two motions to dismiss: one for lack of personal jurisdiction over several defendants (ECF No. 55) and one for failure to state a claim. (ECF No. 61.) This Order addresses the second motion, and the Court dismisses only Kruger's breach of contract claims.

## ANALYSIS

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that the Court dismiss a complaint for failure to state a claim upon which relief can be granted if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ordinarily, a court may not consider matters outside of the pleadings without converting a motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(d). "[D]ocuments necessarily embraced by the complaint," however, are not considered to be "matters outside the pleadings." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Because the Customer Agreement and the Dealer Agreement are embraced by the Complaint, the Court may consider them without converting this motion into one for summary judgment. (*E.g.*, Am. Compl. ¶¶ 183, 211–13, 221.)

## I. Breach of Contract

Lely contends that Kruger's breach of contract claims should be dismissed because Kruger has not alleged that he is a party to a contract with any of the Lely entities, and he is not a third-party beneficiary of the Dealer Agreement between Lely and Dairyland. (ECF No. 63 at 5–10.)

### A. Breach of the Customer Agreement

Under Minnesota law, if a plaintiff cannot plead the existence of a contract between himself and the defendant, the breach of contract claim will fail. *See Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (setting forth the elements of a breach of contract claim).

The Customer Agreement is between Dairyland and Kruger; Lely is not a party to it. Knowing this, Kruger's first theory is that Dairyland was acting as Lely's agent when it entered into the Customer Agreement. (ECF No. 70 at 5–6.) Kruger's primary support

5

for this contention is that Dairyland was obligated, under the Dealer Agreement, to extend Lely's product warranty to Dairyland's customers. (ECF No. 70 at 6; Am. Compl. ¶ 268; ECF No. 31-1 ("Dealer Agreement") at 2.) Because Dairyland has express authority to extend this warranty, Kruger argues, Dairyland was acting as an agent for Lely, and so he may sue Lely for breach of contract.

This argument is mistaken. A dealer is not a manufacturer's agent simply by virtue of being a dealer of that manufacturer's goods. *See Jurek v. Thompson*, 241 N.W.2d 788, 792 & n.6 (Minn. 1976) (distinguishing between an agent and a buyer). Further, for an agency relationship to exist, there must be a right of control and a fiduciary relationship between the principal and agent. *Id.* at 793. Kruger has not alleged that Lely controlled Dairyland or that Lely and Dairyland were in a fiduciary relationship. Because Kruger has not alleged that Dairyland is an agent of Lely, his actual authority agency theory fails.

Kruger next argues that Dairyland had apparent authority to act as Lely's agent, because the Customer Agreement, in Kruger's view, required Lely to provide ongoing support to the purchaser. (ECF No. 70 at 7.) This argument also fails. An agent has apparent authority to bind the principal when the principal holds the agent out as having authority or knowingly allows the agent to act on the principal's behalf. *Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 457 (Minn. Ct. App. 2001). In other words, to assess whether an alleged agent had apparent authority to bind a principal, the focus is on the principal's actions, not the agent's. *See id.* Here, Kruger has not alleged what actions Lely

took that would have caused Kruger to conclude that Dairyland had authority to bind Lely. The single allegation that Dairyland received support from Lely is insufficient to create a contract between Lely and Kruger on a theory of apparent authority. Additionally, the Dealer Agreement contradicts Kruger's agency theory; it specifies that the relationship between Lely and Dairyland is that of a buyer and seller and that Dairyland does not have the authority to bind Lely. (Dealer Agreement at 9.)

Kruger's third theory is that Lely created a contract with Kruger by making express warranties about its products. (ECF No. 70 at 7–10.) Specifically, Kruger points to Lely's marketing materials and says that these materials contained false promises and affirmations of fact, constituting express warranties as to the capabilities and quality of Lely's products. (*Id.* at 7–8.) In Kruger's view, when a manufacturer makes express warranties, the manufacturer is, "in effect, creat[ing] a direct contract with the ultimate buyer." (ECF No. 70 at 7.) Kruger's argument fails because his warranties-as-contracts theory is duplicative of his separate breach of warranty claims. When a breach of contract claim mirrors a breach of warranty claim, the former should be dismissed. *Spectro Alloys Corp. v. Fire Brick Eng'rs Co.*, 52 F. Supp. 3d 918, 929–30 (D. Minn. 2014). Kruger claims that his breach of contract theory is not duplicative of his breach of warranty theory because the breach of contract theory is based on Lely's "contractual[] obligat[ion]" to provide ongoing support, rather than Kruger's allegations that the A4 system contained defects. (ECF No. 70 at 10.) As discussed above, though, the Customer Agreement's

7

provision for Lely providing ongoing support for its machines, along with any alleged express warranties, does not constitute a contract between Lely and Kruger. The fact remains that Lely was not a party to the Customer Agreement, and as such, Lely cannot be held liable for an alleged breach of that contract.

Kruger's breach of contract claims against Lely fail because Dairyland was not Lely's agent and because he cannot maintain his duplicative warranty-as-contract claim.

### B. Breach of Contract as Third-Party Beneficiary

The Court also dismisses Kruger's third-party beneficiary breach of contract claim because he was not a third-party beneficiary of the Dealer Agreement.

A third-party beneficiary of a contract may be intended or incidental; an intended third-party beneficiary has legal rights under a contract; an incidental third-party beneficiary does not. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 833 (Minn. 2012). A third-party is an intended beneficiary of a contract when the parties to the contract intended to give the third-party a right to performance, and the contract satisfies either the duty-owed test or the intent-to-benefit test. *Minn. Laborers Health & Welfare Fund v. Granite RE, Inc.*, 826 N.W.2d 210, 214 (Minn. Ct. App. 2012) (citing *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 369 (Minn. 2005)). Kruger does not base his argument on the duty-owed test. Instead, he argues that, in the Dealer Agreement, Lely and Dairyland intended to benefit him and other A4 system purchasers. The intent-to-benefit test is satisfied when "the circumstances indicate that the promisee intends to give

the beneficiary the benefit of the promised performance." *Caldas*, 820 N.W.2d at 832 (quoting Restatement (Second) of Contracts § 302). Kruger argues that the Dealer Agreement's requirement that Dairyland extend Lely's warranty to the purchaser demonstrates that Lely and Dairyland intended to benefit purchasers. Other than this mention of the warranty, though, the Dealer Agreement evinces no intention of benefitting third parties. Rather, the purpose of the Dealer Agreement was for Dairyland and Lely to specify the terms under which Dairyland would sell Lely's products. Although it is true, in an indirect sense, that Kruger benefitted from the Dealer Agreement requiring Dairyland to extend Lely's warranty to the purchaser, this does not make Kruger an intended third-party beneficiary. Rather, Kruger is better categorized as an incidental beneficiary of the Dealer Agreement. *Caldas*, 820 N.W.2d at 832–33 (distinguishing an intended beneficiary from an incidental beneficiary).

Kruger's third-party beneficiary theory also suffers from the same problem as his argument that he has a contract with Lely by virtue of Lely's representations and warranties—this theory is duplicative of Kruger's breach of warranty claim. Aside from its form, and like his warranty-as-contract argument, it is not clear what differentiates Kruger's claim that he is a third-party beneficiary of the Dealer Agreement's warranty provision from Kruger's breach of warranty claim. As such, the Court dismisses Kruger's third-party beneficiary claim.

**II.   Breach of Warranty**

Lely argues that the Court should dismiss Kruger's claims for breach of express and implied warranties due to Kruger's failure to allege pre-suit notice and because the terms of the Customer Agreement's warranty preclude his implied warranty claims. (ECF No. 63 at 10–16.) Kruger contends that he has adequately pled pre-suit notice and that his implied warranty claims should not be dismissed because the Customer Agreement's warranty is void or voidable because it is unconscionable and fraudulently induced. (ECF No. 70 at 15–26.) The Court finds that Kruger has adequately pled pre-suit notice and that the implied warranty claims should not be dismissed.

*A. Pre-Suit Notice*

Under Minnesota law, a buyer of goods must give the seller notice of a breach of warranty claim before suing the seller. Minn. Stat. § 336.2-607(3)(a). Notice suffices if it "let[s] the seller know that the transaction is still troublesome and must be watched." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009) (citing Minn. Stat. § 336.2-607(3)(a), U.C.C. cmt. 4). "The bar for sufficiency is low, but notice is nevertheless important because it 'informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.'" *Id.* (citing Minn. Stat. § 336.2-607(3)(a), U.C.C. cmt. 4). Requiring pre-suit notice is intended "to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *City of*

*Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1157–58 (D. Minn. 2016) (citation omitted).

Lely contends that Kruger has not alleged that he gave statutorily-sufficient pre-suit notice. (ECF No. 63 at 10–13.) Specifically, Lely claims that Kruger was not only required to give notice that something was awry with his A4 system, but that he also needed to specifically give notice that he believed the defects constituted a breach of warranty. (*Id.* at 11–13.) This argument fails because the bar for sufficiency of pre-suit notice is low, and the notice Kruger gave was sufficient to alert Dairyland and Lely that Kruger had issues with his A4 system. *Drobnak*, 561 F.3d at 784. Further, there is no indication that Kruger acted in bad faith, and to dismiss his warranty claims for lack of pre-suit notice would deprive Kruger, a good faith consumer, of his remedy, thus cutting against the justification for requiring pre-suit notice. *City of Wyoming*, 210 F. Supp. 3d at 1157–58. Because Kruger has alleged that he has given sufficient pre-suit notice, his breach of warranty claims will not be dismissed.

### B. Implied Warranty Claims

Under Minnesota law, a seller of goods may disclaim the implied warranties of merchantability and of fitness for a particular purpose, so long as the disclaimer is conspicuous and specifically mentions the warranties. Minn. Stat. § 336.2-316(2). Here, the Limited Product Warranty that Kruger received when he purchased the A4 specifically and conspicuously disclaims the implied warranties of merchantability and

fitness for a particular purpose. (Customer Agreement at 29.) Kruger claims that the terms of the warranty only precluded him from bringing implied warranty claims against Dairyland, not Lely. (ECF No. 70 at 22–23.) In making this claim, Kruger cites to the wrong warranty.[6] He cites to Schedule E of the Customer Agreement, which lays out the terms of the sale between Kruger and Dairyland. The relevant disclaimer, however, is in Attachment 1 to the Customer Agreement—the Limited Product Warranty. (Customer Agreement at 29.) It is here that Lely disclaims the implied warranties. (*Id.*)

Kruger next argues that even if Lely disclaimed the implied warranties, the Limited Product Warranty is void or voidable because it is unconscionable, and Lely fraudulently induced him into agreeing to it. (ECF No. 70 at 24–26.) Although the Court concludes that the Limited Product Warranty is not unconscionable, Kruger has pled facts to suggest that Lely fraudulently induced Kruger to enter into the contract containing the Limited Product Warranty, so the Court will not dismiss Kruger's implied warranty claims at this stage.

1. *Unconscionability*

Under Minnesota law, a party arguing that a contract is unconscionable must establish that he or she had "'no meaningful choice but to accept the contract term as offered'" and that the terms of the contract were "'unreasonably favorable to the other

---

[6] In fairness to Kruger, he was responding to Lely's argument, which also cited the wrong warranty provision. (ECF No. 63 at 15 (citing the Schedule E warranty provision).)

12

party.'" *TEM Capital, LLC v. Leonard*, Nos. A13-0158, 2013 WL 6152186, at *4 (Minn. Ct. App. Nov. 25, 2013) (quoting *Dorso Trailer Sales, Inc. v. Am. Body & Trailer, Inc.*, 372 N.W.2d 412, 415 (Minn. Ct. App. 1985)). Kruger claims that he had no meaningful choice but to buy the A4 and enter into the Customer Agreement, but he has not alleged any facts to support this argument. Kruger did have other meaningful choices—he could have not bought a robotic milking system at all or could have purchased a robotic milking system from a different manufacturer. Nor are the terms of the Limited Product Warranty unreasonably favorable to Lely. There is nothing unreasonable about Lely disclaiming implied warranties, and the fact that Minnesota law expressly permits such disclaimers weighs heavily against finding that Lely's statutorily-permissible disclaimers were unreasonably favorable to it. Minn. Stat. § 336.2-316(2).

   2. *Fraudulent Inducement*

A contract that a party is fraudulently induced to enter into is voidable. *MCC Invs. v. Crystal Props.*, 415 N.W.2d 908, 911 (Minn. Ct. App. 1987). To establish fraudulent inducement, a plaintiff must plead that: (1) the defendant made a false representation of fact; (2) the defendant either knew the representation was false or asserted it as his own knowledge without knowing whether it was true or false; (3) the defendant intended the plaintiff to rely on the representation; (4) the plaintiff was induced to act based on the representation; and (5) the false representation proximately caused damage to the plaintiff. *Progressive Techs., Inc. v. Shupe*, No. A04-1110, 2005 WL 832059, at *4 (Minn. Ct.

App. Apr. 12, 2005) (citing *Rognlien v. Carter*, 443 N.W.2d 217, 220 (Minn. Ct. App. 1989)). A false representation of fact need not be an outright lie—omission of a fact may constitute fraud when "'a party conceals a fact material to the transaction'" that is "'peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists.'" *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011) (quoting *Richfield Bank & Tr. Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976)).

Here, Kruger has sufficiently alleged that Lely's omissions fraudulently induced him to purchase the A4 system. Specifically, Kruger alleges that Lely had knowledge of the A4's defects but did not disclose them to Kruger or any other purchaser of an A4 system. (Am. Compl. ¶¶ 97–115, 155–80, 329–32.) Further, Kruger has alleged that he would not have purchased the A4 if he had known of its defects. (*Id.* ¶ 334.) As such, Kruger has alleged facts that support his claim that he was fraudulently induced to purchase the A4 system. If he were so fraudulently induced, the contract containing the Limited Product Warranty would be voidable. Because the disclaimer may be voidable, the Court will not dismiss Kruger's implied warranty claims at this stage.

### III.   Tort Claims

Lely argues that the economic loss doctrine bars Kruger's tort claims to the extent they are based on diminution in value of the A4 system or on costs to retrofit Kruger's barn. (ECF No. 63 at 16–17; ECF No. 74 at 15–16.) But because Kruger seeks to recover for

14

damage to property other than the A4 system, and the Court cannot, on a motion to dismiss, limit the damages Kruger may recover on his tort claims, the Court will not dismiss those claims.

Minnesota has codified the economic loss doctrine, which bars a buyer from bringing a tort claim for a product defect when the harm the buyer suffers is solely to the product. Minn. Stat. § 604.101, subdiv. 3. A buyer may bring such a tort claim if he or she has suffered "loss of, damage to, or diminution in value of . . . other tangible personal property or real property." *Id.* subdiv. 3(1). Claims for "reasonable costs of repair, replacement, rebuilding, and restoration" are therefore permissible. *Id.*

The economic loss doctrine does not bar Kruger's tort claims because he seeks to recover for damage caused by the A4 system to "other tangible [] property," such as his milk product and his cows. (Am. Compl. ¶¶ 323, 326.) To the extent that Lely urges the Court to curtail Kruger's tort claims to the degree they seek to recover for damage to the A4 system and Kruger's barn, the Court cannot do so. On a Rule 12(b)(6) motion, the Court may only dismiss a claim, not part of a claim. *My Pillow, Inc. v. LMP Worldwide, Inc.*, No. 18-CV-196 (WMW/DTS), 2019 WL 6727298, at *6 (D. Minn. Dec. 11, 2019). As such, the Court will not dismiss Kruger's tort claims.

## IV. Fraud Claims

Lely's final argument is that the Court should dismiss Kruger's fraudulent concealment and state statutory claims because he has not pled fraud with sufficient

15

particularity to satisfy Rule 9(b).[7] (ECF No. 63 at 18–22.) When a plaintiff alleges fraud, he or she must plead the "circumstances constituting fraud" with particularity. Fed. R. Civ. P. 9(b). This means that the plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012) (citation omitted). The plaintiff must make more than conclusory allegations that the "defendant's conduct was fraudulent and deceptive." *Id.*

Kruger's fraud claims are adequately pled. He alleges that Lely knew of defects with A4 systems and failed to inform consumers of these defects. (Am. Compl. ¶¶ 97–115.) Despite its knowledge, Kruger alleges that Lely made misrepresentation and concealed material facts related to these defects from consumers. (Am. Compl. ¶¶ 155–80.) Thus, Kruger has offered more than conclusory allegations that Lely committed fraud.

Lely also contends that Kruger has not adequately pled the "who" of the fraudulent conduct because he did not specifically plead which Lely entities made the claimed misrepresentations. (ECF No. 63 at 18–19.) Instead, Lely claims that Kruger impermissibly relied on group pleading by alleging that Lely collectively committed the fraudulent acts, failing to identify specific actors. This argument fails as to Kruger's fraudulent concealment claim, because in this claim, Kruger did not refer to Lely as a

---

[7] Kruger does not dispute that his fraudulent concealment and state statutory claims are subject to Rule 9(b)'s pleading standard.

16

collective entity, but rather listed each Lely entity that concealed their knowledge of the defects in A4 systems. (Am. Compl. ¶¶ 329–30, 332–34.) Although it is true that Kruger uses the collective term "Lely" in his state statutory claims, this reference does not warrant dismissal of Kruger's fraud claims. First, as the Court noted in the Order denying Lely's motion to dismiss for lack of personal jurisdiction, it is difficult to discern specifically which Lely entity Lely's marketing materials represent. (ECF No. 95 at 8 n.8.) Second, Kruger's allegations are sufficient to put Lely on notice of the allegations against it. When multiple defendants are members of the same corporate family, are wholly owned subsidiaries, and share counsel, the defendants should be able to sort out amongst themselves who is responsible for the allegedly fraudulent behavior. *Cf. Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880, 889 (D. Minn. 2011) (noting that some courts have determined that collective allegations against a group of defendants are permissible where the defendants are closely related). That point is moot here, however, because Kruger alleges that each of the Lely entities acted fraudulently—each Lely entity was aware of the A4 defects, each concealed material facts, and each violated the state statutes. (*E.g.*, Am. Compl. ¶¶ 76, 122, 159, 160.)

Lely also argues that several of the alleged misrepresentations Kruger points to are not actionable, either because they do not relate to the A4 system or because they were puffery, rather than representations. (ECF No. 70 at 39.) In response, Kruger clarifies that his fraud claims are based on fraudulent omissions, not fraudulent misrepresentations.

17

Because Kruger's theory of fraud relies on Lely's inaction, Lely's argument that its statements were puffery is irrelevant.

Kruger has sufficiently alleged the circumstances of Lely's allegedly fraudulent activity, so his fraudulent concealment and state statutory claims will not be dismissed.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 61) is GRANTED in part and DENIED in part;

2. Counts One and Two of the Amended Class Action Complaint (ECF No. 47) are DISMISSED WITH PREJUDICE; and

3. The remaining claims against Defendants remain pending.

Dated: February 10, 2021            BY THE COURT:

                                    s/Nancy E. Brasel
                                    Nancy E. Brasel
                                    United States District Judge