IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **JARED KRUGER, MARK VAN ESSEN, LYNN KIRSCHBAUM, DONNA and ROBERT KOON, and SCHUMACHER DAIRY FARMS OF PLAINVIEW LLC**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**LELY NORTH AMERICA, INC.**<br><br>Defendant. | Case No. 0:20-cv-00629-KMM/DTS |

## ORDER

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Settlement, Attorneys' Fees, Costs, Expenses, and Service Awards ("Final Approval Motion") (Doc. 188) and Class Counsel's Motion for Attorney's Fees, Costs, Expenses and Service Awards ("Fee Motion") (Doc. 173). For the reasons detailed herein, the Court **GRANTS** both Motions.

## BACKGROUND

Plaintiffs Jared Kruger, Mark Van Essen, Lynn Kirschbaum, Donna and Robert Koon, and Schumacher Dairy Farms of Plainview LLC ("Settlement Class Representatives" or "Plaintiffs")) brought this class action lawsuit on behalf of all persons in the United States or its territories who purchased or leased a new Lely Astronaut A4 robotic milking machine ("A4" or "A4 Robot"). They alleged that the A4 Robot was

defective, resulting in mounting problems and costs in contradiction to what Defendants Lely North America, Inc., Lely Holding B.V., Maasland N.V., Lely Industries N.V., and Lely International N.V. (collectively "Lely" or "Defendants") had represented. After engaging in discovery and subsequent mediation, the Parties reached a settlement and filed the instant Motion seeking this Court's final approval of the agreement.

On January 4, 2023, the Court ordered that "[t]he Settlement Agreement, including the exhibits attached thereto, are preliminarily approved as fair reasonable, and adequate in accordance with Rule 23(e)." Doc. 171 at 2. Further, the Court found that "it will likely certify the class for purpose of judgment on the Settlement." *Id* at ¶ 2. The Court thus directed the Settlement Administrator and the Parties to "carry out the Notice Plan in conformance with the Settlement Agreement and to perform all other tasks that Settlement Agreement requires." *Id*. at ¶ 8.

According to the declaration of Richard Simmons, submitted with the Final Approval Motion, the appointed Settlement Administrator issued the Court-approved Class Notice by first class mail to the Settlement Class Members, and by email to Settlement Class members who had an email address available. The Class Notice advised Settlement Class Members of the material terms of the Settlement and that Class Counsel would seek attorney's fees of up to one-third of the upper-threshold of the Cash Fund (including providing the precise amount requested), reimbursement for their costs and expenses in an amount up to $300,000, and Service Awards as follows: (1) $50,000 for Class Representative Jared Kruger; (2) $25,000 for Class Representative Mark Van Essen; and (3) $15,000 each for Settlement Class Representatives Lynn Kirschbaum, Donna and

2

Robert Koon, and Schumacher Dairy Farms of Plainview LLC. Pursuant to the deadlines established by the Court in its January 4, 2023 order, the Class Notice also notified Settlement Class Members that the deadline to submit objections to the Settlement or to opt-out of the Settlement Class was April 4, 2023.

On March 14, 2023, Class Counsel filed their Fee Motion seeking one-third of the upper-threshold of the Cash Fund ($21,433,333.33), reimbursement for costs and expenses ($264,245.39), and the above stated Service Awards for each Class Representative. Doc. 174. No Class Members objected to the Settlement, Class Counsel's fees and expenses, or the service awards requested.[1] Likewise, no opt-out requests were received. In fact, the Settlement was overwhelmingly supported by the Settlement Class Members, as Settlement Class Members owning approximately 96% of the eligible A4 robots chose to participate in the Settlement.

On July 13, 2023, Plaintiffs filed their Final Approval Motion. On July 24, 2023, the Court held a Final Approval Hearing to consider the pending motions.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

In granting preliminary approval, the Court was well informed in concluding that it will likely be able to certify the class for purposes of judgement on the Settlement. Nothing has changed to alter the Court's conclusion. The Court has considered Plaintiffs' Final Approval Motion and the supporting documents, and now confirms that the Settlement

---

[1] Although no formal objections were raised to the requested service awards, Class Representative Jared Kruger appeared at the Final Approval Hearing on July 24, 2023 and asked the Court to increase his service award. The Court addresses Mr. Kruger's request in a separate order.

3

meets the requirements for approval and that the Settlement Class meets the requirements for certification.

**Class Certification.**   The Settlement Class is defined as follows:

All persons in the United States or its territories who purchased or leased a new Lely Astronaut A4 Robot.

The Settlement Class excludes individuals or entities who purchased or leased a used Astronaut A4 robot. Also excluded from the Settlement Class are the Court and its officers and employees; Defendants and their corporate parents, siblings, relatives, and subsidiaries, as well as their officers, directors, employees, and agents; governmental entities; and those who timely request to opt-out pursuant to the requirements set forth in the Settlement Notice.

To certify a Settlement Class for the purpose of settlement the Court must conclude that the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b) are satisfied. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Court finds that the requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) and of Rule 23(b) (predominance and superiority) are satisfied.

First, the Court finds that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, it would be impracticable to join the over 400 Class Members to a single lawsuit; thus, the numerosity requirement is satisfied.

Second, the Court finds that there is at least one "question[] of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[F]or the purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations omitted). Commonality is established if Class Members' claims "depend upon a common contention" that is "capable of classwide resolution," meaning

that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Here, there are a number of questions of law and fact common amongst Settlement Class Members, and those questions substantially predominate over any questions that may affect individual Settlement Class Members. These common questions of law and fact include:

> Are the A4 Robots defectively designed? Were Defendants on notice of the defective nature of the A4 Robots and, if so, as of what date? Do the A4 Robots meet the past performance data and statics uniformly represented by Defendants? Did Defendants breach any express and/or implied warranty of merchantability? Did Defendants breach an implied warranty of fitness for a particular purpose? Did Defendants owe a duty of care to Plaintiffs and the Class? Were Defendants negligent? Did Defendants make material misrepresentations in advertising, marketing and selling the A4 Robots? Did Defendants conceal facts regarding the A4 Robots? Were Plaintiffs and the Class damaged by Defendants' actions?

Doc. 166 at 39-40.

Third, the claims or defenses of the Settlement Class Representatives are typical of those of the Settlement Class. Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of those of the class. This requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). In assessing typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Here, the Settlement Class Representatives' claims are typical of the other members of the Settlement Class because all claims arise from the same course of conduct by Defendants,

5

the same defects and operational problems with the A4 Robots, and are based on the same legal theories. The requirement of typicality thus is satisfied.

Fourth, the Court finds that the "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry. . .serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The Court does not find any conflicts between the Settlement Class Representatives and the Settlement Class members, as all have similar interest in establishing Defendant's liability for the same conduct and recovering damages resulting from that conduct. The Class Representatives have demonstrated their commitment to the class by actively representing the interests of the proposed class. Likewise, Class Counsel have demonstrated their determination to vigorously prosecute this case. Class Counsel are highly experienced in complex class action litigation and have negotiated many class action settlements of this magnitude. The Court therefore finds the adequacy requirement satisfied.

The Court now turns to the requirements to Rule 23(b)(3). As stated above, the Court finds that both of the requirements of Rule 23(b)(3) are satisfied. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 619-20 (citation omitted). Here, the Court finds that the questions common to Settlement Class Members predominate over questions affecting individual Settlement Class Members, as Settlement Class Members were all allegedly harmed by the same conduct, and common factual and legal issues substantially

6

predominate over any questions that may affect individual Class Members. Moreover, the Court also finds that a class action is superior to individual litigations, which "would be more burdensome and less efficient[.]" *See Vogt v. State Farm Life Ins. Co.*, 2018 WL 1955425, at *7 (W.D. Mo. April 24, 2018).

**Class Notice.** The Court confirms the Class Notice was implemented in accordance with the Court's January 4, 2023 order. Doc. 171 ¶ 2; *see also* Simmons Decl. ¶¶ 4-10. The Court further confirms its prior findings that the form and substance of the notice meet, and have met, the requirements of Federal Rule of Civil Procedure 23, the constitutional requirements of due process, and any other legal requirements.

2.   **Approval of the Settlement**. To approve a settlement under Rule 23(e), the Court must find that the settlement is "fair, reasonable, and adequate" after considering several listed factors. *See* Fed. R. Civ. P. 23(e); *In re Uponor, Inc. F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013). The Court has considered the identified factors as well as the submissions by Settlement Class Representatives. The Court finds that each of the factors listed in Rule 23(e) and identified by the Eighth Circuit support approval of the Settlement in accordance with its preliminary determination. *See* Doc. 171.

First, the Settlement Class Representatives and Class Counsel have adequately represented the Settlement Class as evidenced throughout the course of this proceeding, including their achievement of outstanding relief for the Settlement Class that has received overwhelming support from them. Second, the Settlement was the product of arm's length negotiation reached only after significant litigation and following three full day mediation

7

sessions before a neutral mediator. Third, the meaningful relief provided by the Settlement – valued at approximately $121,956,000 – is plainly significant, particularly given the costs, risks and delay of trial and appeal. Furthermore, the straightforward process for distributing settlement relief supports final approval of the Settlement. Moreover, the relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are considered. Fourth, the Settlement treats Settlement Class Members equitably relative to one another because each Class Member was able to freely choose between a *pro rata* distribution of the cash fund (Option 1), or trading in their Lely A4 robot for a new Lely A5 robot (Option 2), subject to the Class Member still owning their A4 Robot as required for a trade-in. Fifth, participation in the claims process was unprecedented with nearly 100 percent participation, which far exceeds the average claims rate. Furthermore, Lely has shown both its willingness and financial ability to comply with its financial obligations under the Settlement. Moreover, As noted above, no opposition to the Settlement was filed. For these reasons, the Court concludes that the Settlement is fair, reasonable, and adequate and approves the Settlement.

   3.  **Releases.** As of the Effective Date, the Releasing Parties shall be deemed to have, and by operation of this Order and the contemporaneously entered Final Judgment shall have, waived any and all Released Claims against the Released Parties, as defined in the Settlement Agreement (Doc. 167-1).

   4.  **Dismissal and Continuing Jurisdiction.** The Court hereby dismisses this Action with prejudice except the Court retains exclusive jurisdiction over this Action and the Parties, attorneys, and Settlement Class Members with respect to the administration,

interpretation, and effectuation or enforcement of the Settlement Agreement, this Order granting Plaintiffs' Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for Attorney's Fees, Costs, Expenses and Service Awards, and the contemporaneously entered Final Judgment.

### Attorney's Fees, Costs, Expenses and Settlement Class Representative Service Awards

1. **Attorney's Fees.** "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When calculating attorneys' fees under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 456 U.S. 886, 900 n.16 (1984). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)); *see also Khoday v. Symantec Corp.*, No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *8-9 (D. Minn. 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017). The percentage method aligns the interests of the attorneys and the class members by incentivizing counsel to maximize the class's recovery. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 (8th Cir. 1996) ("[T]he

9

Task Force [established by the Third Circuit] recommended that the percentage of the benefit method be employed in common fund situations." (citing *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (3rd Cir. 1985))).

Moreover, the Court takes into account the full value of the Settlement to Class Members in determining the percentage to award. As explained in Class Counsel's Fee Motion (Doc. 174), "[I]t is well-established that [a] fee award should be based on the total economic benefit bestowed on the class." *Chieftan Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29- KEW, 2018 WL 2296588, at *4 (E.D. Okla. Mar. 27, 2018); *accord In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award based on total potential cash contribution by defendant even though the full amount was "not paid into the fund"); *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *5 (W.D. Mo. Aug. 16, 2019) ("Under the 'common fund' doctrine … the benefit should be based on both the monetary and the non-monetary value of the settlement.") (cleaned up); Principles of the Law of Aggregate Litigation § 3.13 (2010) ("the percentage being based on both the monetary and the nonmonetary value of the judgment or settlement") (emphasis added)).

The Court agrees that awarding a percentage of the fund is appropriate here.  After calculating a fee award using the percentage of the value of the Settlement, district courts generally evaluable "the ultimate reasonableness of the award…by considering relevant factors from the twelve factors listed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719–20 (5th Cir. 1974) (cleaned up)." *In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018). The Court concludes that an award of

attorney's fees equal to 17.6 percent of the Settlement's full value is supported by those factors for the reasons set forth in the briefing submitted by the Plaintiffs' and their counsel including without limitation that representation was undertaken by Class Counsel on a fully contingent basis; Class Counsel has spent more than 13,178.25 hours prosecuting this action without any guarantee of a recovery; Class Counsel advanced $280,069.08 in out-of-pocket costs on behalf of the Settlement Class, again with no guarantee of a recovery; the Settlement represents an excellent result for the Settlement Class as reflected by the nearly 100% participation rate; and there are no objections to the fee request despite the participate rate of the Settlement Class. In fact, the request and the amount awarded here, as a percentage of the settlement value, is less than what was awarded in the most analogous settlement involving another defective robotic milking system. *See Bishop et al. v. DeLaval, Inc.*, 5:19-cv-06129-SRB, 2022 WL 18957112, at *3 (W.D. Mo. July 20, 2022) (approving one-third of settlement fund).

2. **Costs and Expenses**.  It is also well-established that "[r]easonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.'" *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1067 (D. Minn. 2010) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Under the Settlement, Class Counsel may seek up to $300,000.00 in actual costs and expenses reimbursement. Class Counsel has submitted $280,069.08 in costs and expenses, including a summary by category of the costs and expenses incurred. No objections were received to the request for

these reimbursements. The Court finds these costs and expenses were reasonably incurred and are reimbursable from the fund. *See Tussey*, 2019 WL 3859763, at *5.

3.   **Service Awards**.  The Court also approves the following Service Awards: (1) $50,000 for Class Representative Jared Kruger; (2) $25,000 for Class Representative Mark Van Essen; and (3) $15,000 each for Settlement Class Representatives Lynn Kirschbaum, Donna and Robert Koon, and Schumacher Dairy Farms of Plainview LLC. No objections to the Service Awards were submitted.[2] "Courts routinely recognize and approve incentive awards for class representatives and deponents." *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009). The Eighth Circuit has enumerated a number of "relevant factors in deciding whether incentive award to named plaintiff are warranted." *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (cleaned up). "Courts should consider actions plaintiff took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort plaintiff expended in pursuing litigation." *Zilhaver v. UnitedHealth Group, Inc.*, 646 F.Supp2d 1075, 1085 (D. Minn. 2009) (cleaned up).

Here, a successful resolution of this matter would not have been possible without the substantial work of the Settlement Class Representatives. The Settlement Class has greatly benefited by the time and effort expended by the Settlement Class Representatives. Given the size of the Settlement Fund and the overall value of the Settlement, the requested awards are *de minimis* to the amount attributable to each Settlement Class Member. And

---

[2] As noted above, Mr. Kruger appeared at the Final Approval Hearing and asked the Court increase his service award, but he did not make a formal objection.

the amount requested is reasonable. *See Caligiuri.*, 855 F.3d at 867 ("courts in this circuit regularly grant service awards of $10,000 or greater."); *Bishop*, 2022 WL 18957112, at *3 (finding service awards of $50,000, $25,000 and $10,000 commensurate with level of participation in the lawsuit appropriate).

**IT IS HEREBY ORDERED** that Plaintiffs' Motion is **GRANTED**.

Date: September 1, 2023                             *s/Katherine Menendez*
                                                    Katherine Menendez
                                                    United States District Judge